# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **BEIJING IQIYI SCIENCE & TECHNOLOGY CO., LTD., and BEIJING QIYI CENTURY SCIENCE & TECHNOLOGY CO., LTD.** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 6:19-cv-00272-ADA** |
| **v.** | |
| **ITALK GLOBAL COMMUNICATIONS, INC., a Texas corporation d/b/a ITALKBB and ITALK-BB; and DOES 1 through 100, inclusive,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## IQIYI'S OPPOSITION TO ITALK GLOBAL'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

ARGUMENT .............................................................................................................. 1

**I.**  CHINA DOES NOT PROVIDE AN ADEQUATE FORUM FOR THIS DISPUTE ............. 2

    **A.**  A Chinese Court Is Not Adequate To Adjudicate This Controversy Because The Chinese Rules Of Evidence Do Not Allow iQIYI To Reinstate Its Suit In China Without Undue Prejudice .............................................................................................. 3

    **B.**  Chinese Courts Also Are Not Adequate Because They Provide No Remedy For The Majority Of iQIYI's Claims. ............................................................................. 6

    **C.**  The Chinese Litigation Has No Bearing On Whether China Is An Adequate Forum For The Current Dispute In The United States. ................................................ 7

**II.** THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF DENYING iTALK GLOBAL'S MOTION ............................................................................................... 8

    **A.**  The Ease Of Access To Evidence Factor Supports Denying iTalk Global's Motion ................................................................................................................ 8

        **i.**  The evidence iQIYI requires for the Asserted Claims is in the United States. ............................................................................................................ 8

        **ii.**  iTalk Global is the sole infringer in the United States. .............................. 11

        **iii.** iTalk Global's license agreement with Future TV has no bearing on the convenience of litigating in the United States. ......................................... 12

    **B.**  The Availability Of Compulsory Process For Unwilling Witnesses Favors Denying iTalk Global's Motion. ...................................................................... 14

    **C.**  The Cost of Obtaining Attendance Of Willing Witnesses Favors Keeping This Case In The United States. ................................................................................ 15

    **D.**  The Possibility of A View Of The Premises Factor Is Neutral .......................... 15

    **E.**  Any Other Practical Factors That Make Trial Expeditious And Inexpensive Favor Denying iTalk Global's Motion. ............................................................. 15

    **F.**  iQIYI's Chinese litigation "bears only marginally on the touchstone of the forum non conveniens analysis" .......................................................................... 16

**III.** THE RELEVANT PUBLIC FACTORS WEIGH IN FAVOR OF DENYING iTALK GLOBAL'S MOTION .......................................................................................... 17

    **A.**  The Administrative Difficulties Flowing From Court Congestion In China Favors Denying iTalk Global's Motion. ............................................................ 17

    **B.**  The Local Interest In Having Localized Controversies Resolved At Home Favors Denying iTalk Global's Motion. ............................................................ 18

    **C.**  This Court's Familiarity With U.S. Law Favors Denying iTalk Global's Motion. .............................................................................................................. 19

**D.** The Avoidance Of Unnecessary Problems Of Conflict Of Laws Of The Application Of Foreign Law Favors Denying iTalk Global's Motion. ........................... 20

**IV.** CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Adelson v. Hananel,*
   510 F.3d 43 (1st Cir. 2007) ................................................................................................ 16

*Bates v. Laminack,*
   938 F. Supp. 2d 649 (S.D. Tex. 2013) ............................................................................... 13

*Bridgeman Art Library v. Corel Corp.,*
   36 F. Supp. 191 (S.D.N.Y. 1999) ...................................................................................... 20

*Camejo v. Ocean Drilling & Exploration,*
   838 F.2d 1374 (5th Cir. 1988) ............................................................................................. 8

*Dickson Marine Inc. v. Panalpina, Inc.,*
   179 F.3d 331 (5th Cir. 1999) ............................................................................................... 3

*DTEX LLC v BBVA Bancomer SA,*
   508 F.3d 785 (5th Cir. 2007) ......................................................................................... 8, 14

*Duha v. Agrium, Inc.,*
   448 F.3d 867 (6th Cir. 2006) ............................................................................................. 14

*Fahmy v. Jay-Z,*
   891 F.3d 823 (9th Cir. 2018) ....................................................................................... 19, 20

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.,*
   867 F. Supp. 2d 859 (E.D. Tex. 2012) .............................................................................. 18

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,*
   754 F.2d 591 (5th Cir. 1985) ............................................................................................. 19

*Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.,*
   No. 04 CIV. 3136 (HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) ................................... 19

*Guangzhou Media American Co. Ltd. v. iTalk Global Communications, Inc.,*
   2017 WL 9437753 (C.D. Cal. July 26, 2017) .................................................................... 11

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1946) ....................................................................................................... 2, 8

*Halo Creative & Design, Ltd. v. Comptoir Des Indes, Inc.,*
   816 F.3d 1366 (Fed. Cir. 2016) ......................................................................................... 18

*In re Air Crash Disaster Near New Orleans, Louisiana,*
   821 F.2d 1147 (5th Cir. 1987) ......................................................................................... 3, 6

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) ............................................................................................. 17

*Indusoft, Inc. v. Taccolini,*
   560 Fed. Appx. 245 (2014) ................................................................................................ 16

*iTalk Global Communications, Inc. v. Hanya Star Limited,*
   Case No. 2:12-cv-03469-SVW-FFM, Dkt No. 1 (C.D. Cal.) .............................................. 17

*Karim v. Finch Shipping Co.*,
  265 F.3d 258 (5th Cir. 2001) ................................................................. 1

*Lacey v. Cessna Aircraft Co.*,
  932 F.2d 170 (3d Cir. 1991) ............................................................. 4, 9

*Motown Record Co., L.P. v. iMesh.Com, Inc.*,
  2004 WL 503720 (S.D.N.Y. 2004) .................................................. 7, 8

*Nolan v. Boeing Co.*,
  919 F.2d 1058 (5th Cir. 1990) ............................................................ 14

*Norex Petroleum, Ltd. v. Access Indus.*,
  416 F.3d 146 (2d Cir. 2005) ............................................................. 3, 8

*Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*,
  356 Fed. Appx. 675 (5th Cir. 2009) ...................................................... 2

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ......................................................... 2, 6, 13, 14

*S&D Trading Acad., LLC v. AAFIS, Inc.*,
  494 F. Supp. 2d 558 (S.D. Tex. 2007) ............................................... 16

*Saregama India Ltd. v. Mosley*,
  635 F.3d 1284 (11th Cir. 2011) .......................................................... 20

*Schaffer ex rel. Schaffer v. Weast*,
  546 U.S. 49 (2005) ............................................................................. 11

*Syndicate 420 at Lloyd's London v. Early American Ins. Co.*,
  796 F.2d 821 (5th Cir. 1986) ................................................................ 6

*The Name LLC v. Arias*,
  No. 10 CIV. 3212 RMB, 2010 WL 4642456 (S.D.N.Y. 2010) ............... 18

*Tyco Fire & Sec. v. Alcocer*,
  No. 04-23127-CIV, 2009 WL 10668241 (S.D. Fla. Mar. 7, 2009) ........... 6

*WBCMT 2007-C33 Blanco Retail, LLC v. Salfiti*,
  SA-13-CV-716-XR, 2014 WL 325407 (W.D. Tex. 2014) ...................... 13

**Rules**

Fed. R. Civ. P. 8 .................................................................................... 4

**Other Authorities**

14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3828.2 (4th ed.) ......... 2

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 17.05 (2019) .................... 19, 20

This case is about an Austin-based company infringing U.S. copyrights and violating U.S. law in Austin, elsewhere in Texas and throughout the United States.  Defendant iTalk Global Communications, Inc. d/b/a iTALKBB and iTALK-BB (collectively "iTalk Global"), a Texas company with headquarters in Austin, Texas, markets and sells iTalkBB TV programming and set-top boxes (the "iTalkBB TV platform") to U.S. consumers providing access to TV shows (the "iQIYI Exclusive Shows") exclusively owned by Plaintiffs Beijing iQIYI Science & Technology Co., Ltd. and Beijing Qiyi Century Science & Technology Co., Ltd. (collectively, "iQIYI" (pronounced I-CHEE-EE)).

iTalk Global's motion to dismiss (the "Motion") should be denied.  First, iTalk Global cannot show that China is an adequate alternative forum because (1) iQIYI would be deprived of all remedies under Chinese law for lack of proof of infringement due to iTalk Global's actions after iQIYI filed its complaint and (2) Chinese law only recognizes two of the six causes of actions asserted in this lawsuit.  The Court's inquiry should end there, and the present motion should be denied.  Second, even if China was an appropriate forum, which it is not, both the private and public interest factors weigh against granting iTalk Global's Motion.

## ARGUMENT

### iTALK GLOBAL'S MOTION SHOULD BE DENIED BECAUSE IT FAILED TO ESTABLISH THE AVAILABILITY OF AN ALTERNATIVE ADEQUATE FORUM AND TO SHOW THAT THE BALANCE OF PUBLIC AND PRIVATE INTEREST FACTORS FAVORS DISMISSING THIS CASE

The doctrine of *forum non conveniens* permits federal courts, "in rare circumstances," to "relinquish their jurisdiction in favor of another forum" in a foreign country.  *Karim v. Finch Shipping Co.*, 265 F.3d 258, 268 (5th Cir. 2001).  The doctrine was designed to protect a defendant "when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or [to protect the court] when the 'chosen forum

[is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). Thus, invoking this doctrine suggests some misuse of the venue by the plaintiff, for instance, when he seeks "justice blended with some harassment." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1946). Accordingly, dismissal is only appropriate "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft*, 454 U.S. at 249.

"[T]he defendant bears the burden of persuasion on all elements of the *forum non conveniens* analysis." 14D Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3828.2 (4th ed.) "[O]verzealous invocation of the doctrine runs a significant risk of depriving, in the name of 'convenience,' a plaintiff of its chosen forum when the parties or controversy have a legitimate connection to the United States. . . . Thus, courts should be guarded in granting *forum non conveniens* motions, especially because the plaintiff's forum choice is entitled to some deference. Although the doctrine frequently is discussed in terms of 'convenience,' it probably is better considered as a doctrine about avoiding 'undue burden.'" *Id.* at § 3828. Here, iTalk Global cannot carry its burden of proving an undue and unfair burden of litigating in its home forum— the Western District of Texas.

## I.      CHINA DOES NOT PROVIDE AN ADEQUATE FORUM FOR THIS DISPUTE

To dismiss a case on *forum non conveniens* grounds, "the defendant seeking dismissal must establish that there is an alternate forum that is both available and adequate." *Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed. Appx. 675, 679 (5th Cir. 2009). If there is not an adequate and available forum, the inquiry ends and the court should deny the motion. *Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 160 (2d Cir.

2005).  iTalk Global cannot meet this initial showing, and its motion should be denied for this reason alone.

iTalk Global contends that China is adequate because "China has copyright and trademark laws under which [iQIYI] can seek relief."  *See* Motion at 8.  Despite the existence of copyright and trademark laws in China, iTalk Global cannot demonstrate that China is an adequate alternative forum for this dispute.  First, iTalk Global removed all evidence of infringement (i.e., the iQIYI Exclusive Shows) from the iTalkBB TV platform after iQIYI filed its complaint, and iQIYI simply cannot bring its infringement claims in China given the very different evidentiary rules and proof requirements in China, which iTalk Global's motion ignores.  Second, Chinese law does not recognize four out of six of iQIYI's claims.  iQIYI's claims include (1) direct copyright infringement, (2) inducement of and contributory copyright infringement, (3) vicarious copyright infringement, (4) violation of the DMCA for removal of copyright management information, (5) unfair competition for false designation of origin and false advertising, and (6) common law conspiracy (collectively, the "Asserted Claims").  Only two claims—direct copyright infringement and unfair competition—are recognized under Chinese law.

> **A.    A Chinese Court Is Not Adequate To Adjudicate This Controversy Because The Chinese Rules Of Evidence Do Not Allow iQIYI To Reinstate Its Suit In China Without Undue Prejudice.**

"The case law is clear that an alternate forum is adequate and available when the entire case and all of the parties come within the jurisdiction of that forum."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999).  The Fifth Circuit stated that a district court must "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147, 1166 (5th Cir. 1987), *vacated on other grounds, PAN AM v. Lopez*, 490 U.S. 1032 (1989) .

If the Court dismisses this case to be refiled in China, iQIYI will not be able to litigate the case because it does not have evidence in a form that is acceptable to a Chinese court to show infringement. Former Judge Mr. Shi Yun Decl. ("Former Judge Decl.") at ¶ 20 ("Accordingly, the plaintiff will not obtain any remedies due to lack of proof of infringement."); Qingyang Xu Decl. ¶¶ 11-13. This reason alone renders the Chinese court inadequate to adjudicate iQIYI's claims.

The Third Circuit's decision in *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1991) is instructive. In *Lacey*, an Australian passenger injured in a British Columbian air crash brought a products liability suit in Pennsylvania district court, alleging that the crash was caused by a defect in the aircraft's exhaust system manufactured by a company in Pennsylvania. *Id*. at 173. The manufacturer later sold its business and "no longer has in its possession any documentation" with respect to the exhaust system in question. *Id*. at 183. The district court dismissed the complaint on ground of *forum non conveniens*, and the Third Circuit reversed. Underscoring the importance of plaintiff's access to evidence, the court reasoned that if the complaint is dismissed, plaintiff will be unable to obtain evidence essential to his products liability claim. *Id*. at 186. iQIYI would face the same problem here. The rules of evidence in China differ markedly from those in the U.S. Following U.S. rules and procedures, iQIYI pled its case under Fed. R. Civ. P. 8 on information and belief, and attached screenshots of the iQIYI Exclusive Shows taken from the iTalkBB TV Platform as evidence of infringement. *See, e.g*., Dkt No. 1, Original Complaint, Exhibits B-N; Dkt Nos. 18, First Amended Complaint, Exhibits B-P. To litigate in this Court, iQIYI will obtain additional evidence of infringement through written discovery and deposition testimony.

Quite differently, Chinese courts allow only very limited discovery and rely almost exclusively on documentary evidence rather testimony of witnesses. Former Judge Decl. ¶ 5.3; Xu Decl. ¶¶ 17-19; *see also* deLisle Decl. (Dkt No. 24-4), at ¶ 45 ("Adjudication in China . . .

depends relatively more on documentary evidence (including notarized statements) and relatively less on in-person testimony and cross examination than is typically the case in common law jurisdictions.").   Depositions, document requests, and interrogatories under U.S. law are not available in China.  Former Judge Decl. ¶ 5.3.

To prove copyright or trademark infringement in a Chinese court, the plaintiff must demonstrate infringement ***in the courtroom*** and provide ***notarized evidence*** of infringement. Former Judge Decl. ¶ 18; Xu Decl. ¶ 8.  Because iTalk Global's TV service is not available in China, Jenny Qu Decl. ¶ 9, iQIYI would not be able to demonstrate infringement in a Chinese courtroom.  Former Judge Decl. ¶ 18; Xu Decl. ¶ 8.  Instead, iQIYI must therefore rely on notarized evidence to show infringement.  Former Judge Decl. ¶ 18; Xu Decl. ¶ 9.  To obtain notarized evidence, Chinese rules of evidence require iQIYI to obtain an official video taken by a notary company, in which the notary purchased a new iTalkBB set-top box from iTalk Global, reset it to factory settings, connected it to the internet in the United States, and accessed the iQIYI Exclusive Shows from the iTalkBB platform. Former Judge Decl. ¶ 18; Xu Decl. ¶ 10.  Moreover, as provided by China's Supreme Court, if a litigant submits to the court any evidence that was generated or collected ***outside of China***, such evidence shall be notarized by a notary office in such country and legalized by the Chinese consulate in the same country; or otherwise it shall be certified pursuant to applicable treaties.  Former Judge Decl. ¶ 18; Xu Decl. ¶ 13.  Failure to follow the Chinese evidentiary rules will result in rejection of unqualified evidence and subsequent dismissal of the case with prejudice for lack of proof.  Former Judge Decl. ¶¶ 19-20; Xu Decl. ¶¶ 11-13 (citing Chinese Supreme Court rules and cases where Chinese courts found plaintiffs failing to meet the burden of proof due to lack of notarized evidence showing the alleged culpable conduct).

Here, relying on U.S. procedure and evidentiary rules, iQIYI did not obtain notarized video evidence meeting Chinese requirements.  Wendy Wang Decl. ¶ 4.  iQIYI cannot now collect the necessary notarized evidence of infringement that would be necessary in a Chinese Court because iTalk Global removed the iQIYI Exclusive Shows from its iTalkBB platform.  *Id*. at ¶ 22.  Thus, all evidence of U.S. infringement that could have been used in China has effectively been destroyed by iTalk Global.  *Id*.  If this case were now dismissed, a Chinese court would not accept iQIYI's existing evidence and iQIYI would be left without a remedy.  Former Judge Decl. ¶ 20; Xu Decl. ¶¶ 11-13.  iQIYI's inability to reinstate this suit in China renders China inadequate.  *See In re Air Crash*, 821 F.2d at 1166 (holding that a district court must "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice").  Accordingly, iTalk Global cannot show that China is an adequate and available forum.

> **B.   Chinese Courts Also Are Not Adequate Because They Provide No Remedy For The Majority Of iQIYI's Claims.**

Dismissal is "not . . . appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 235, 254 n.22.  In other words, an alternate forum is only adequate and available when the entire case comes within the jurisdiction of that forum.  *Syndicate 420 at Lloyd's London v. Early American Ins. Co*., 796 F.2d 821, 826 n.8 (5th Cir. 1986).  Where, as here, the foreign court fails to recognize many of a plaintiff's claims, courts have held that the foreign alternative forum is not adequate and denied the motion for *forum non conveniens*.  *See, e.g.*, *Tyco Fire & Sec. v. Alcocer*, No. 04-23127-CIV, 2009 WL 10668241, at *3 (S.D. Fla. Mar. 7, 2009) (holding Mexico is inadequate where it failed to recognize three of plaintiff's four causes of action); *Motown Record Co., L.P. v. iMesh.Com, Inc*., 2004 WL 503720, *6 (S.D.N.Y. 2004) (holding that where the defendants failed to carry their burden where their submissions were silent on the issue of whether Israeli courts could enforce U.S. copyrights).

Here, only two of the Asserted Claims—direct copyright infringement and unfair competition—are recognized under Chinese law. Xu Decl. ¶¶ 15-16. iTalk Global's Chinese law expert fails to address whether the remaining four claims are recognized under Chinese law. *See* deLisle Decl. ¶¶ 18-28. Thus, iTalk Global must admit that China is not an adequate forum for iQIYI's claims of inducement of and contributory copyright infringement, vicarious copyright infringement, violation of the DMCA for removal of copyright management information, and common law conspiracy. For this reason alone, iTalk Global cannot demonstrate that China is an adequate and available forum for iQIYI's case.

### C. The Chinese Litigation Has No Bearing On Whether China Is An Adequate Forum For The Current Dispute In The United States.

iTalk Global additionally contends that "Plaintiffs can hardly dispute that Chinese courts afford them adequate relief for acts of copyright infringement on the iTalkBB Chinese TV platform" because iQIYI filed lawsuits in China relating to iTalkBB's copyright infringement in Australia. *See* Motion at 8. iTalk Global's argument is misplaced. First, the iTalkBB-related entity providing the set-top box in Australia was dissolved and there was no entity left in Australia to pursue. Qu Decl. ¶ 8. Consequently, China was the only forum available to iQIYI to pursue a claim for iTalk Global's infringement in Australia. Accordingly, iQIYI obtained the necessary notarized evidence that could be used in China. *Id.* at ¶ 10. In this lawsuit, however, iTalk Global is responsible for infringement so iQIYI did not need to procure notarized evidence for use in a Chinese court. Wang Decl. ¶ 4. Second, iQIYI's Chinese lawsuit only involves copyright infringement claims, whereas this lawsuit involves four additional causes of action that are not recognized under Chinese law. Xu Decl. ¶¶ 15-16. Where, as here, iTalk Global has failed to offer any evidence to show Chinese law would provide remedies for these claims, courts have held that the foreign alternative forum is not adequate. *See, e.g.*, *Motown*, 2004 WL 503720 at *6.

The Court need not go any further, and iTalk Global's motion should be denied.  *See Norex*, 416 F.3d at 160 (holding that the district court should deny the motion to dismiss without balancing the private and public interest factors when there is not an adequate available forum).

## II.   THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF DENYING iTALK GLOBAL'S MOTION

If the Court determines that China is an adequate forum for iQIYI's case, then the court weighs the public and private interest factors to determine whether the case should be dismissed in favor of that forum. *See Gulf Oil*, 330 U.S. at 508.   A court, however, does not engage in a straight balancing test; depriving the plaintiff of his chosen forum is an exceptional outcome, only appropriate when the balance is "strongly in favor of the defendant." *Id.; see also DTEX LLC v. BBVA Bancomer SA*, 508 F.3d 785, 795 (5th Cir. 2007); *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1381 (5th Cir. 1988).   Here, the relevant factors do not support an exceptional outcome of depriving iQIYI the ability to enforce U.S. copyright and trademark rights against a Texas-based defendant in a U.S. court.

### A.   The Ease Of Access To Evidence Factor Supports Denying iTalk Global's Motion .

#### i.   The evidence iQIYI requires for the Asserted Claims is in the United States.

iTalk Global argues that "all relevant sources of proof are located in China, and none are located in this District." *See* Motion at 10.  In fact, the evidence of infringement by iTalk Global—the only defendant here—is in the United States.  iTalk Global admits that its "***set-top boxes are not sold in China and cannot be accessed through the Internet in China***."  *See* Qu Decl. ¶ 9. iQIYI would have *no access* to evidence of infringement if this case is dismissed and refiled in China.  *See Lacey*, 932 F.2d at 186 ("Generally, the access to proof factor is defined as 'relative

ease of access to sources of proof.'  Implicit in this phraseology is that the plaintiff could, if necessary, gain access to essential sources of proof in either forum.")

iTalk Global attempts to minimize this factor by stating that it "does not anticipate any significant dispute regarding whether and to what extent the Disputed Works were displayed." *See* Motion at 10.  But evidence of infringement is a prerequisite to establish liability, and iQIYI will bear the burden to establish infringement in the U.S. and in China.  A Chinese court would still demand to examine evidence of infringement and iQIYI would have no way of presenting any evidence of infringement in the United States due solely to iTalk Global's actions.  Former Judge Decl. ¶¶ 19-20; Xu Decl. ¶¶ 8-14.

Further, the evidence of induced copyright infringement is exclusively in the United States. For example, communications and documents exchanged between iTalk Global and its U.S. consumers are relevant to the inducement claim and are in the possession of iTalk Global.

iTalk Global markets and sells iTalkBB services online and in 23 stores located in the United States, including in Dallas and Houston.  Wang Decl. ¶ 5.  iTalk Global admits it is the "sales agent and billing and collections agent [] with respect to the iTalkBB Chinese TV platform," and therefore has financial information relating to the iTalkBB TV platform.  *See, e.g.*, Dkt No. 24-1, Zhao Decl. ¶¶ 12, 14; Dkt No. 24-2, Wu Decl. ¶ 7; Motion at 4.  The set-top boxes used to access the iQIYI Exclusive Shows are shipped from a warehouse in Virginia and sold to U.S. consumers by iTalk Global, an Austin company.  Alice Tan Decl. ¶¶ 4-6.  iTalk Global also solicits dealers—including several in Texas—who re-sell the iTalkBB TV services to U.S. consumers, so the dealership contracts, communications, and witnesses are all in the United States.  Wang Decl. ¶ 6.  Accordingly, all evidence of sales and marketing is exclusively in the United States.

iTalk Global also promotes its brand and services in the United States.  In 2018, iTalk Global partnered with Verizon to offer "12 months of the premium Chinese TV service from iTalkBB (valued at $180/year) at no additional charge" to new Verizon customers.  *Id.* at ¶ 7.  iTalk Global's contract and communications with Verizon[1] are certainly in the United States.  iTalk Global also sponsored the Brooklyn Nets and invited the Nets players to visit the iTalkBB New York flagship store to meet fans, in order to promote and market the  iTalkBB services.  *Id.* at ¶ 8. LinkedIn bios of iTalk Global's U.S.-based employees also demonstrate that iTalk Global has multiple employees dedicated to promoting the iTalkBB brand to U.S. consumers.  *Id.* at ¶ 9. Moreover, a viewer watching an iQIYI Exclusive Show on the iTalkBB TV platform will be shown advertising at the beginning of each episode.  *Id.* at ¶ 21.  iTalk Global, by itself and through its wholly-owned subsidiary iTalk Media, Inc., sells advertisements to its clients, promoting these clients' U.S. services or products to U.S. consumers.  *Id.* at ¶¶ 10-11.  iTalk Global has also provided advertising targeted at consumers in the U.S. for AIG, Verizon Fiber Optic Service, Chase, Lexus, State Farm, Kikkoman, BMW, Xoom, Mohegan Sun, United Healthcare, and Mass Mutual.  *Id.* at ¶ 12.  Communications and/or contracts with these entities regarding the iTalkBB TV platform are located in the United States, so iTalk Global's documents regarding its advertising services are in the United States.  In addition, there are at least 21 iTalk Media employees in the United States, including a business development manager in Washington D.C., an account executive in Virginia, and a business development manager in Los Angeles.  *Id.* at ¶ 13.

iTalk Global's arguments that iQIYI's witnesses are in China is misplaced because the focus should be on defendant iTalk Global, i.e., where the witnesses are located for the company

---

[1] Verizon is an American telecommunication company with headquarters in New York, NY. https://www.verizon.com/about/our-company/verizon-corporate-headquarters.

subject to the Asserted Claims.  *See* Motion at 11.  iQIYI will make its relevant witnesses available in the District.

### ii.   iTalk Global is the sole infringer in the United States.

In its motion, iTalk Global makes various factual representations about its corporate structure, functions, and employees' responsibilities through declarations.  *See, e.g.*, Dkt No. 24-1, Jack Zhao Decl. ¶¶ 4-15; Dkt No. 24-2, Xi Wu Decl. ¶¶ 4-20.  Publicly available information directly contradicts iTalk Global's representations.[2]  For example, iTalk Global states that it "is not responsible for displaying the Disputed Works or managing the iTalkBB Chinese TV platform" and that "the individuals responsible for obtaining content for the iTalkBB Chinese TV platform . . . are in China." Motion at 1, 5, 11-12; Zhao Decl. ¶¶ 8-9, 12-14.  These statements are contradicted by iTalk Global's own pleadings in a lawsuit filed in the Central District of California: "iTalk Global [d/b/a iTalkBB] contracts with the [third-party content] provider on behalf of iTalkTV HK" to select content for iTalk Global's IPTV services.  Third Party Compl., *Guangzhou Media American Co. Ltd. v. iTalk Global Commn.s, Inc.*, 2017 WL 9437753 (C.D. Cal. July 26, 2017).

In addition, publicly available information on LinkedIn further contradicts iTalk Global's statements.  Specifically, several bios of iTalk Global's U.S.-based employees demonstrate that they are/were "[r]esponsible for the design, development, and implementation of . . . internet TV

---

[2] It is well established that the party who bears the burden of proof loses if the record is inconclusive on the crucial point.  *See, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005).  Consequently, the Court should deny iTalk Global's motion, because iTalk Global has failed to satisfy its heavy burden to justify the extraordinary remedy it seeks.  But to the extent the Court finds it helpful, iQIYI requests limited discovery that would allow it to challenge iTalk Global's supporting declarations which are contrary to publicly available information.  In particular, iQIYI seeks iTalk Global's answers to its previously submitted Requests for Admission Nos. 1-13 (Wang Decl. Ex. J), production of documents responsive to RFP Nos. 14-16, 18-19, 35-40 (*id*. Ex. K), and answers to Interrogatory Nos. 1-4, 6, 12-13, 21-22 (*id*. Ex. L) relating to the forum dispute.  iQIYI further seeks depositions of iTalk Global's CEO (*id*. Ex. M) and a Rule 30(b)(6) deposition of an iTalk Global corporate representative (*id*. Ex. N).

products." Wang Decl. Ex. B  (Victoria Lei LinkedIn).  They claim to "own [iTalk Global's] TV product line" and lead efforts to "initiat[e] [TV] product . . . strategies to drive user [growth]."  *Id*. Ex. B (Elaine Wei LinkedIn).  The Manager of iTalk Global's TV Content Department resides in San Francisco.  *Id*. Ex. B (Karen Sun LinkedIn).  Furthermore, iTalk Global is actively recruiting employees in the United States relating to the operation of the iTalkBB TV platform.  For example, iTalk Global advertised a position for a "TV Project Manager" in the U.S., whose responsibilities include "work[ing] with our rapidly growing TV product team."  *Id*. Ex. D.  iTalk Global also sought a U.S.-based video producer to "ingest media from a variety of formats, transcode, subtitle, and repurpose video content."  *Id*. Ex. E.  This evidence demonstrates that iTalk Global is responsible for providing the infringing content in the U.S.  Finally, iTalk Global holds itself out to U.S. consumers as "a company dedicated to ***creating*** innovative and authentic mobile communication experiences and ***TV content*** for people around the globe"  and further represents to U.S. consumers that iTalkBB's professional content editing team specializes in searching and editing the iQIYI Exclusive Shows and topics that interest immigrants the most, allowing consumers to enjoy the best quality Chinese news and entertainments while living abroad.  Wang Decl. ¶ 15 (emphasis added); First Am. Compl. ¶ 37.  These public admissions by iTalk Global undercut the reliability of iTalk Global's evidence and also demonstrate that it cannot carry its burden on the current record.

### iii. iTalk Global's license agreement with Future TV has no bearing on the convenience of litigating in the United States.[3]

iTalk Global argues that "relevant evidence on which iTalk Global will rely to prove the validity of  iTalkTV HK's authorization to display the Disputed Works is [] in Beijing."  *See*

---

[3] It is worth noting that iTalk Global admits that the license agreement with Future TV does not cover at least one of the iQIYI Exclusive Shows, Motion at 10, so the Future TV license agreement cannot be a complete defense to iQIYI's copyright infringement claim.

Motion at 11.  According to iTalk Global, iTalkTV HK "owns and operates the iTalkBB Chinese TV platform" and is headquartered and maintains its business records, including license agreements, in Beijing."  *See id*.  As an initial matter, iTalk Global was able to obtain a copy of the license agreement between iTalkTV HK and Future TV and attached it to its motion to dismiss.  *See* Ex. B to Xi Wu Decl, Dkt No. 24-2.  The agreement has a confidentiality provision, so iTalk Global would have had to obtain permission from Future TV to attach the agreement to its Motion. Accordingly, iTalk Global's own motion demonstrates that it actually has access to all of the documents it needs to litigate the case in this District and that it has possession, custody, or control of documents and witnesses of iTalkTV HK and Future TV.

Furthermore, iTalk Global's arguments relating to Future TV should be disregarded.  First, iTalk Global made no effort to bring Future TV as a third-party defendant, despite the claim that Future TV will indemnify iTalkTV HK for copyright infringement liabilities.  Wang Decl. ¶ 16. Future TV has not stated that it would contest the jurisdiction of this Court.  Thus iTalk Global fails to meet its burden to prove "trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant."  *Piper Aircraft*, 454 U.S. at 241.  Second, iTalk Global's potential indemnification claim against Future TV can be resolved in a separate lawsuit in China.  A defendant's indemnity claim involving a third party does not make that third party an essential or necessary party to the lawsuit.  Importantly, "[f]ederal Rule of Civil Procedure 19 does not require joinder of persons against whom a party has a claim for contribution."  *WBCMT 2007-C33 Blanco Retail, LLC v. Salfiti*, SA-13-CV-716-XR, 2014 WL 325407, at *6 (W.D. Tex. 2014) (citing *Bates v. Laminack,* 938 F. Supp. 2d 649, 660 (S.D. Tex. 2013) ("The fact that the existing Defendants may have some right of reimbursement, contribution, or indemnity against a non-party does not make the non-party indispensable.")).

13

iTalk Global cited cases in which U.S. courts considered the defendants' inability to recover contribution as a factor in determining *forum non conveniens*, *see* Motion at 15, but these cases are not applicable here, where iTalk Global fails to show any restriction on iTalk Global's ability to recover contribution from Future TV in China. *See, e.g*., *Piper Aircraft*, 454 U.S. at 259 (considering the Scottish law's prohibition of contribution for liability on a judgment in the United States); *Nolan v. Boeing Co*., 919 F.2d 1058, 1069 (5th Cir. 1990) (same); *DTEX*, 508 F.3d at 800 (finding a "defendant's inability to implead a third party [ ] not dispositive"). In fact, the Future TV license covers programs streamed on the iTalkBB TV platform ***not in China but in North America***, so Future TV should expect to either be haled into a court in the United States or receive a request to indemnify iTalk Global related to a lawsuit filed in the United States. *See* Future TV License Agreement, Dkt No. 24-2 at 4 ("[B]oth party A [Future TV] and party B [iTalkTV HK] agree to jointly operate Internet TV business in North America, and jointly develop Internet TV market in North America."). iTalk Global has failed to show that the ease of access to sources of proof weighs in favor of dismissal.

**B.    The Availability Of Compulsory Process For Unwilling Witnesses Favors Denying iTalk Global's Motion.**

Neither iTalk Global nor Future TV has indicated that any Future TV witnesses are unwilling to testify in this dispute. "When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor." *Duha v. Agrium, Inc*., 448 F.3d 867, 877 (6th Cir. 2006).

If this case is dismissed and refiled in China, however, the Chinese court would not be able to compel any employees of iTalk Global or iTalk Media to attend trial in China.[4] *See* Former

---

[4] Mr. Zhao, iTalk Global's CEO, indicated that he was willing to travel to China if this case proceeds to China. But his declaration speaks nothing about the remaining iTalk Global or iTalk Media employees who reside in the United States. For example, Ms. Victoria Lei, Executive VP,

Judge Decl. ¶ 22.  iTalk Global has at least 60 U.S. employees and iTalk Media has at least 21 U.S. employees.  Wang Decl. ¶¶ 13, 17.  These employees at least have knowledge about the iTalkBB TV platform, the servers in the United States, and the sales/marketing of iTalkBB services in the United States.

Furthermore, because depositions are not permitted in China, neither party would be able to depose Future TV, iTalk Global, or iTalk Media witnesses.  Former Judge Decl. ¶ 5.3.  A Chinese court would also lack subpoena power to compel Future TV, iTalk Global, and iTalk Media to attend trial.  *Id.* at ¶¶ 21-23.

### C.     The Cost of Obtaining Attendance Of Willing Witnesses Favors Keeping This Case In The United States.

"[T]here are approximately 18 employees who live and work in (or around) Beijing who are involved in the management and operation of the iTalkBB Chinese TV platform."  Xi Wu Decl. ¶ 13, Dkt No. 24-2.  In contrast, iTalk Global, the entity actually infringing in the United States, has over 60 employees and iTalk Media has over 21 employees in the United States.  Wang Decl. ¶¶ 13, 17.  Balancing demonstrates that it would be more expensive to take witnesses to China.

### D.     The Possibility of A View Of The Premises Factor Is Neutral.

This factor is inapplicable because there are no premises at issue.  But as discussed above, it is only possible to view iTalk Global's infringing activities in the United States.

### E.     Any Other Practical Factors That Make Trial Expeditious And Inexpensive Favor Denying iTalk Global's Motion.

---

is "[r]esponsible for the design, development, and implementation of . . . internet TV products."  Wang Decl. Ex. B.  Ms. Elaine Wu, Product Manager, claims to "own [iTalk Global's] TV product line" and lead efforts to "initiat[e] [TV] product . . . strategies to drive user [growth]."  *Id.* Ex. B.  Ms. Karen Sun, Manager of iTalk Global's TV Content Department, should have knowledge of the iTalkBB TV contents in the United States.  *Id.* Ex. B.

The potential need for translation does not warrant dismissing this case.  The employees of iTalk Global, iTalk Media, and relevant third-parties, who reside in the United States, presumably speak English and possess documents in English.  To the extent documents have mixed languages, this factor weighs against granting iTalk Global's motion.  *See, e.g.*, *S&D Trading Acad., LLC v. AAFIS, Inc*., 494 F. Supp. 2d 558, 572 (S.D. Tex. 2007).

**F.      iQIYI's Chinese litigation "bears only marginally on the touchstone of the forum non conveniens analysis"**

The Fifth Circuit has held that "the mere presence of parallel litigation bears only marginally on the touchstone of the *forum non conveniens* analysis." *Indusoft, Inc. v. Taccolini*, 560 Fed. Appx. 245, 251 (5th Cir. 2014).  Indeed, "[t]he existence of concurrent litigation is not a relevant factor to the analysis" because "[b]y focusing on the existence of parallel proceedings in a foreign court, the district court essentially converted the analysis into a determination of which of the two pending cases should go forward.  In so doing, the court erroneously lowered the defendant's burden of proving that the balance of factors justified dismissal of a suit from a U.S. plaintiff's choice of home forum." *Adelson v. Hananel*, 510 F.3d 43, 53–54 (1st Cir. 2007).  Again, iQIYI did not choose to sue in China; rather, iQIYI was forced to file its complaint in China for infringing activities in Australia because the entity selling the iTalkBB set-top box there dissolved and there was no entity left in Australia to pursue.  Qu Decl. ¶ 8.

iTalk Global's argument that iQIYI's Chinese litigation involves many of the same issues being litigated here, including iTalkTV HK's authorization to show the iQIYI Exclusive Shows, is wrong and should be disregarded.  Motion at 16.  *First*, the Future TV license agreement is not at issue in the Chinese litigation because it only applies to activities in North America.  Wu Decl. Ex. B, Future TV License Agreement, Dkt No. 24-2, at 8.  Second, iTalk Global admits that the license agreement with Future TV does not cover at least the iQIYI Exclusive Show identified in

paragraph 24(i) of the First Amended Complaint, Motion at 5, and iTalk Global provides no evidence or argument that the Asserted Claims relating to this show should be dismissed and refiled in China.  Third, the scope of the iQIYI Exclusive Shows at issue in China is different. iQIYI's Chinese lawsuit involves only three of the fifteen iQIYI Exclusive Shows at issue in the instant case.  Qu Decl. ¶ 8.  Finally, in 2012, iTalk Global filed a complaint in the Central District of California submitting to jurisdiction of U.S. federal courts and conceding venue was proper. *See* Wang Decl. Exs. G & H, *iTalk Global Comms., Inc. v. Hanya Star Ltd.*, No. 2:12-cv-03469-SVW-FFM, Dkt Nos. 1, 27 (C.D. Cal.).  In that case, iTalk Global sought a temporary restraining order and preliminary injunction against Hanya Star Limited, a Chinese company, regarding a contract dispute governed by Hong Kong law. *See id*. Exs. G & H.  Accordingly, iTalk Global's arguments about convenience should be given little weight.

## III. THE RELEVANT PUBLIC FACTORS WEIGH IN FAVOR OF DENYING iTALK GLOBAL'S MOTION

The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

### A. The Administrative Difficulties Flowing From Court Congestion In China Favors Denying iTalk Global's Motion.

Court congestion is a problem in China.  Former Judge Decl. ¶¶ 24-29.  According to the U.S. Federal Judicial Caseload Statistics, in the calendar year of 2018, 3485 cases were filed and 2825 cases were pending in the Western District of Texas.  Wang Decl. ¶ 19.  In contrast, "in 2018, Chinese courts accepted and heard 28 million cases," and "from January 1 to September 20, 2019, the number of newly accepted cases of the Beijing Internet Court, the court where three cases

between iQIYI and iTalk Global's parent companies are pending, alone reached 34,249." *Id.* at ¶ 29. The time required to resolve this case will be longer because this case is a "foreign case" that involves infringement in the United States. Former Judge Decl. ¶ 32. Even with extremely limited discovery in China, the actual time may be one or two years or longer. *Id.* at ¶ 31.

> **B.     The Local Interest In Having Localized Controversies Resolved At Home Favors Denying iTalk Global's Motion.**

iTalk Global argues that because iQIYI is a Chinese company, iTalk Global's U.S. infringement "is felt in China." Motion at 17. iTalk Global's infringement of iQIYI's U.S. copyrights occurred exclusively in the U.S. and iTalk Global's conduct related to the other causes of action also occurred in the U.S. "[T]he location of the . . . injury is an important consideration in determining how to weigh this factor." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 872 (E.D. Tex. 2012).

U.S. federal courts have a local interest in enforcing U.S.-registered copyrights, and "have routinely denied motions to dismiss on *forum non conveniens* grounds when United States intellectual property rights form the crux of the dispute." *Halo Creative & Design, Ltd. v. Comptoir Des Indes, Inc.,* 816 F.3d 1366, 1373 (Fed. Cir. 2016) (collecting cases); *see also The Name LLC v. Arias*, No. 10 CIV. 3212 RMB, 2010 WL 4642456, at *7 (S.D.N.Y. Nov. 16, 2010) (declining "to dismiss cases pursuant to *forum non conveniens* where plaintiff asserts U.S. trademark or copyright claims"). This is because "the public interest weighs heavily in favor of the adjudication of U.S. intellectual property disputes in domestic forums." *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.,* No. 04 CIV. 3136 (HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005). Indeed, U.S. courts have such a strong interest in hearing Lanham Act claims that "[i]t is [...] well settled that 'when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trade-mark rights of the

18

parties are irrelevant and inadmissible.'" *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985).

### C. This Court's Familiarity With U.S. Law Favors Denying iTalk Global's Motion.

Contrary to iTalk Global's argument that "Chinese law will be integral to this case," Motion at 18, U.S. law will be applied to all of iQIYI's claims.  iQIYI's copyright infringement claims involve U.S.-registered copyrights and will be governed by the Copyright Act.  *See* First Amended Complaint, Dkt No. 18, Exs. A1-A10 (U.S. Certificates of Registration).  The fact that the iQIYI Exclusive Shows were created and first published in China does not affect their protection under U.S. law.  *Fahmy v. Jay-Z*, 891 F.3d 823, 831 (9th Cir. 2018) (quoting Nimmer on Copyright § 17.05 (2019)) ("The applicable law is the copyright law of the state in which the infringement occurred, not of the state of which the author is a national or in which the work was first published.").  The unfair competition claim is governed by the Lanham Act and involves iQIYI's trademarks used in the U.S. pending federal registration.[5]  Wang Decl. ¶ 20.

iTalk Global's argument that Chinese law applies to ownership of the iQIYI Exclusive Shows is incorrect.  Motion at 18.  "[W]hen a work protected under U.S. copyright law—whether created in Argentina, Zanzibar, or anywhere in between—is infringed anywhere in the United States, the domestic strictures concerning scope of rights, procedure, access and substantial similarity, defenses, and remedies should apply.  The same considerations mean that originality must likewise be determined pursuant to U.S. law, even as to works created abroad."  Nimmer on Copyright § 17.05; *see also Bridgeman Art Library v. Corel Corp.*, 36 F. Supp. 2d 191, 195-97 (S.D.N.Y. 1999) (evaluating originality and copyrightability under U.S. law).  The cases cited by

---

[5] The removal of copyright management information claim is governed by the DMCA.  The civil conspiracy claim is governed by Texas common law.

19

iTalk Global are inapplicable. *See* Motion at 18. In *Fahmy*, 891 F.3d at 831, the court applied U.S. copyright law to a copyrighted work created in Egypt. In *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1292 (11th Cir. 2011), the court assumed without deciding whether Indian law applies, and noted that Indian copyright law of assignment is strikingly similar to U.S. copyright law. iTalk Global further argues that the relevant license agreements will be governed by Chinese law. Motion at 18. This is also incorrect. As discussed above, the ownership of iQIYI's U.S. copyrights will be governed by U.S. law, the law of the place of infringement. Nimmer on Copyright § 17.05; *Bridgeman*, 36 F. Supp. 2d at 195-97. Finally, the Future TV license agreement has no bearing on whether the United States is a convenient forum.

### D. The Avoidance Of Unnecessary Problems Of Conflict Of Laws Of The Application Of Foreign Law Favors Denying iTalk Global's Motion.

iTalk Global's argument that there is a "risk of conflicting judgments" due to iQIYI's unrelated Chinese litigation should be given no weight. *See* Motion at 19. The relevant inquiry here is whether a court adjudicating ***this dispute***—either the U.S. or China—would run into problems of conflicts of laws or applying foreign law. U.S. law will apply to all of iQIYI's claims and the claims at issue in iQIYI's Chinese litigation are different. If this lawsuit is dismissed and refiled in China, however, a Chinese court will likely run into issues with applying U.S. law. This is the exact problem this public interest factor cautions courts to avoid.

## IV. CONCLUSION

iQIYI would be wholly denied a remedy in Chinese courts and its decision to seek protection under U.S. law should not be disturbed. All of the key evidence is in the U.S., 81 of the 99 potential witnesses reside in the U.S., and the private and public factors weigh in favor of denying iTalk Global's motion. iTalk Global's motion should be denied.

Dated:  September 30, 2019           Respectfully submitted,

                        */s/ Craig Tyler*
                        M. Craig Tyler
                        Texas State Bar No. 00794762
                        VINSON & ELKINS L.L.P.
                        2801 Via Fortuna, Suite 100
                        Austin, TX 78746-7568
                        Telephone: (512) 542-8440
                        Facsimile:  (512) 236.3256
                        Email: ctyler@velaw.com

                        Chao "Wendy" Wang (*Pro Hac Vice*)
                        California State Bar No. 289325
                        VINSON & ELKINS L.L.P.
                        555 Mission Street, Suite 2000
                        San Francisco, CA  94105
                        Telephone: (415) 979-6900
                        Facsimile:  (415) 651-8786
                        Email: wwang@velaw.com

                        Parker Hancock *(Pro Hac Vice)*
                        Texas State Bar No. 24108256
                        VINSON & ELKINS L.L.P.
                        1001 Fannin Street, Suite 2500
                        Houston, TX  77002-6760
                        Telephone:  (713) 758-2153
                        Facsimile:  (713) 615-5140
                        Email:  phancock@velaw.com

                        **ATTORNEYS FOR BEIJING IQIYI**
                        **SCIENCE & TECHNOLOGY CO., LTD.**
                        **AND BEIJING QIYI CENTURY**
                        **SCIENCE & TECHNOLOGY CO., LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2019, a true and correct copy of the foregoing document was served on all counsel of record who have deemed to have consented to electronic service via the Court's CM/ECF system pursuant to Local Rule CV-5(a).

                        */s/ Craig Tyler*
                        M. Craig Tyler