# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **BEIJING IQIYI SCIENCE & TECHNOLOGY CO., LTD., and BEIJING QIYI CENTURY SCIENCE & TECHNOLOGY CO., LTD.** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 6:19-cv-00272-ADA** |
| **v.** | |
| **ITALK GLOBAL COMMUNICATIONS, INC., a Texas corporation d/b/a ITALKBB and ITALK-BB; and DOES 1 through 100, inclusive,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

### IQIYI'S SUR-REPLY TO ITALK GLOBAL'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

iTalk Global, a Texas company conducting business and infringing U.S. copyrights exclusively in the U.S., fails to prove litigating in its home "forum would establish . . . oppressiveness and vexation." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981) (internal quotation marks omitted).  Using admissions and statements that various issues are not disputed, iTalk Global unjustifiably narrows the dispute as pertaining to only its own affirmative license defense.  But this motion to dismiss ("Motion") must take all of iQIYI's claims into account.  iTalk Global does not and cannot deny that the actions giving rise to iQIYI's claims occurred in the United States, and critical evidence of its infringement, sales, marketing, and inducement of infringement all exists in the United States.

iTalk Global attempts to trivialize the undue prejudice iQIYI will face in China by offering to not dispute (1) the authenticity of the screenshots, (2) airing of the iQIYI Exclusive Shows, and (3) jurisdiction in China.  Such attempts must fail and do not cure iQIYI's lack of remedy in China.  Because iTalk Global removed the iQIYI Exclusive Shows from the iTalkBB TV platform, the screenshots attached to the First Amended Complaint ("FAC") cannot be verified against the originals, cannot be notarized or certified, and cannot be used in a Chinese court. iTalk Global's proposed stipulation of airing of the iQIYI Exclusive Shows—from a Chinese court's perspective—is an out-of-court statement with no evidentiary value.  Further, a Chinese court has a case acceptance phase to assess whether filing requirements, including jurisdiction, have been met.  If forced to refile in China, iQIYI's case will be rejected at this phase for lack of personal jurisdiction even before iTalk Global appears and consents to jurisdiction.

In its Reply, iTalk Global's CEO Jack Zhao shifted from his prior position that iTalk Global was not responsible for iTalkBB's TV content or finances (Zhao Decl. ¶ 13), and now admits iTalk

Global has 100 U.S. employees, including some focused on TV service (Supp. Zhao Decl. ¶ 5). This inconsistency confirms iTalk Global has not met its burden and its Motion should be denied.

## ARGUMENT

## I.   ITALK GLOBAL FAILS TO MEET ITS BURDEN TO PROVE THAT CHINA IS AN ADEQUATE AND AVAILABLE FORUM.

iTalk Global erroneously suggests that iQIYI has to "overcome the presumption that Chinese courts are adequate." Reply at 6. There is no such presumption, and to the contrary, iTalk Global bears the heavy burden of showing the exceptional tool of a *forum non conveniens* dismissal is warranted. *Wilson v. Island Seas Investments, Ltd*., 590 F.3d 1264, 1269 (11th Cir. 2009). iTalk Global also accuses iQIYI of not citing cases where courts found China to be inadequate, and this again obfuscates the black letter law that defendant bears the burden on all elements of the *forum non conveniens* analysis. iTalk Global does not cite—and iQIYI is unaware of—any case in which a U.S. court dismissed a copyright infringement case in favor of a Chinese forum. In fact, U.S. courts often find Chinese courts to be inadequate. *See, e.g.*, *Mercury Cable & Energy, Inc. v. Wang Chen*, No. SACV 12-01857, 2013 WL 1389990, at *5 (C.D. Cal. Apr. 1, 2013) (inadequate for RICO, fraud, patent ownership, intentional interference and conspiracy); *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*, No. C 07-05248 JW, 2008 WL 11398913, at *7 (N.D. Cal. Feb. 29, 2008) (tortious interference with contracts); *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179, 1183 (E.D. Mo. 2006) (trade secret theft).

### A.   iTalk Global's Proposed Stipulation Of Infringement And Jurisdiction Does Not Make China An Adequate Forum.

iTalk Global's proposed stipulation on the authenticity of the screenshots does not make them admissible in China. Reply at 3-4. The Chinese court requires iQIYI, the party with the burden of proof, to show notarized evidence of infringement. Former Judge Decl. ¶ 18. Such notarized evidence—since it was collected outside of China—must be certified by the Chinese

consulate in the United States.  *Id*.  The screenshots cannot be verified against the originals (because iTalk Global removed the iQIYI Exclusive Shows), cannot be notarized or certified, and cannot be used in a Chinese court.  Supp. Shi Yun Decl. ("Supp. Former Judge Decl.") ¶¶ 8-9.

Nor does the proposed stipulation on the airing of the iQIYI Exclusive Shows and consent to jurisdiction cure iQIYI's undue prejudice in China.  A U.S. entity's stipulation in U.S. litigation has no evidentiary value in China. *Id*. at ¶¶ 6-7.  Further, a Chinese court has a case acceptance procedure to assess whether filing requirements like jurisdiction have been met.  If refiled in China, this case will be rejected at this phase for lack of personal jurisdiction before iTalk Global appears and consents to jurisdiction.  *Id*. at ¶¶ 1-5.  Also, from a practical standpoint, iQIYI would have no way of enforcing a Chinese judgment against iTalk Global.  Former Judge Decl. at ¶ 33-34.  iTalk Global misreads *Lacey v. Cessna Aircraft Co*., 932 F.2d 170, 186 (3d Cir. 1991), which reversed a dismissal where the plaintiff could not obtain essential evidence in a foreign court.  This emphasizes the importance of plaintiff's access to evidence, and iQIYI will face the same access problem in China.

iTalk Global's contention that it still possesses the removed evidence of infringement underscores the potential prejudice to iQIYI in China.  *See* Reply at 4.  Now that evidence of infringement is within the exclusive control of iTalk Global, iQIYI cannot access this evidence publicly or compel production in China, unlike the U.S. discovery process.[1]  Xu Decl. ¶¶ 18-19. Where, as here, a plaintiff faces undue inconvenience or prejudice when reinstating the suit in the alternative forum, the Court should deny the motion.  *See In re Air Crash Disaster*, 821 F.2d 1147,

---

[1] iTalk Global also claims that iQIYI "could sue iTalk Global" in China.  Reply at 3.  iQIYI's ability to bring suit in China has no bearing on whether iQIYI can obtain any remedy.

1166 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *op. reinstated except as to damages*, 883 F.2d 17 (5th Cir. 1989).

### B.   iTalk Global Does Not Dispute That Chinese Law Only Recognizes Two Of iQIYI's Six Claims, So China Is Inadequate For This Dispute.

Only two of the asserted claims—direct copyright infringement and unfair competition—are recognized under Chinese law.  Xu Decl. ¶¶ 15-16.  iTalk Global's Chinese law expert does not dispute that Chinese law does not recognize the majority of iQIYI's claims, i.e., inducement of and contributory copyright infringement, vicarious copyright infringement, violation of the DMCA for removal of copyright management information, and common law conspiracy.  For this reason alone, iTalk Global's Motion should be denied.

iTalk Global, however, argues that a foreign forum is adequate as long as it can provide some remedy to just one of multiple causes of action.  Reply at 5.  That misstates the law.  Although a foreign court need not provide identical causes of action, where, as here, the foreign court fails to recognize many of a plaintiff's claims, courts have held that the foreign alternative forum is not adequate.  *See, e.g., Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 425-26 (1st Cir. 1991) (finding Turkey inadequate because Turkish law does not recognize certain contract claims); *Tyco Fire & Sec. v. Alcocer*, No. 04-23127-CIV, 2009 WL 10668241, at *3 (S.D. Fla. Mar. 7, 2009) (finding Mexico inadequate where it failed to recognize three of plaintiff's four claims and could not grant injunctive relief); *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445, 456 (D. Del. 1978) (finding Ecuador inadequate where it failed to recognize two of plaintiff's three claims).

And, although China has unfair competition law, China will not be able to resolve iQIYI's unfair competition claim arising from conduct within U.S. territory.  iQIYI's unfair competition claim under the Lanham Act is territorial in nature.  "It is . . . well settled that 'when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign

courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible.'" *Fuji Photo Film Co, Inc.. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985); *see also Fraserside IP L.L.C. v. Gamma Ent., Inc.*, No. C11-3056-MWB, 2012 WL 1155682, at \*15-16 (N.D. Iowa Apr. 5, 2012); *The Name LLC v. Arias*, No. 10 CIV 3212 RMB, 2010 WL 4642456, at \*7 (S.D.N.Y. Nov. 16, 2010). Here, iQIYI alleges that iTalk Global's unlawful use of the iQIYI trademarks and false advertising created confusion in U.S. consumers. FAC ¶¶ 98-113. Chinese courts will not be able to adjudicate whether U.S. consumer confusion exists.

### C. The Chinese Litigation Has No Bearing On Whether China Is An Adequate Forum For The Current Dispute.

The Chinese litigation, repeatedly asserted by iTalk Global as an indication that China is adequate, is irrelevant to this case. *See, e.g.*, Motion at 8; Reply at 1, 5-6. As noted before, iQIYI was forced to sue in China because the iTalkBB-related entity selling the set-top box in Australia was dissolved and there was no entity left to pursue. Qu Decl. ¶ 8. The new Australian entity identified by iTalk Global (*see* Supp. Zhao Decl. ¶ 2) is not the same entity that sold the infringing set-top box and it is unclear whether the new entity would be the proper defendant in Australia.

Regardless, the Chinese litigation involving a different dispute has no bearing on whether China is adequate for this dispute. Opposition at 7-8, 16-17. First, the Future TV license is not at issue in the Chinese litigation because it only applies to activities in North America. Wu Decl. Ex. B, at 8. Second, iTalk Global admits that the Future TV license does not cover at least one of the iQIYI Exclusive Shows (Motion at 5), and iTalk Global provides no evidence or argument that the asserted claims relating to this show should be dismissed. Third, the Chinese lawsuit involves only three of the fifteen iQIYI Exclusive Shows at issue in this case. Qu Decl. ¶ 8. Because China is not an adequate forum, the Court need not go any further, and iTalk Global's motion should be denied. *Norex Petroleum, Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 160 (2d Cir. 2005).

## II.    THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF DENYING ITALK GLOBAL'S MOTION

By overemphasizing some undisputed issues, iTalk Global incorrectly presents this dispute as limited to its license defense.  But this Motion must take all of iQIYI's claims into account. iTalk Global does not and cannot deny that the actions giving rise to iQIYI's claims occurred in the U.S., and critical evidence of its infringement, sales, marketing, and inducement of infringement all exclusively exists in the U.S.  iTalk Global attempts to trivialize this highly relevant evidence as "random" (*see* Reply at 7), but provides no contrary argument suggesting it has any sales, marketing, and inducement evidence in China.  *See, e.g.*, *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1318 (S.D.N.Y. 1995) (denying motion for *forum non conveniens* because "[t]he central issues . . . concern alleged violations of United States trademark and copyright laws, not . . foreign contract law" relating to the defendant's license defense).

Also, after iQIYI presented overwhelming public information contradicting iTalk Global's representations, Mr. Zhao provided a supplemental declaration that shifts away from iTalk Global's prior position.  Mr. Zhao previously stated that iTalk Global was not responsible for iTalkBB's TV content or finances (Zhao Decl. ¶ 13), but now admits that iTalk Global has 100 U.S. employees and ***at least some employees*** focus their activities on television service (Supp. Zhao Decl. ¶ 5).  Indeed, iTalk Global advertises and sells phone, mobile, internet, and television services indiscriminately in a bundle.  Supp. Wang Decl. ¶¶ 5-6.  The iTalkBB subscription form has four types of services, i.e., home phone, mobile, television, and internet, from which a customer is encouraged to pick one or a bundle of services.  *Id*.  The iTalkBB local store specifically advertises TV service.  *Id*. at ¶ 7.  Given that iTalk Global has 100 U.S. employees and sells TV services in the same manner as the other services, it is inconceivable that none or

6

very few employees work on the TV service.  iQIYI is entitled to discovery to test these inconsistent factual representations.

Mr. Zhao also indicates that two of the three employees, whom iQIYI identified as examples of potential witnesses, no longer work for iTalk Global.  Supp. Zhao Decl. ¶¶ 3-4.  iTalk Global further claims its initial disclosures do not have any witnesses located in the U.S.  Reply at 1.  There are 100 iTalk Global employees and many third-party witnesses in the U.S. whom iTalk Global self-servingly chose to omit from its initial disclosures.  These factual controversies created by iTalk Global show that it cannot meet its burden and, at the very least, underscore the need for discovery.  Without discovery, iQIYI cannot know iTalk Global employees' relevance to the claims and defenses. But it is clear there are many U.S. witnesses involved in editing, delivering, marketing and selling the infringing content.  This is further support for iQIYI's requests to obtain documents, interrogatory responses, and depose Mr. Zhao and the person most knowledgeable at iTalk Global to understand the corporate structure, functions, and employees' responsibilities. Opposition at 11, n.2.

Focusing solely on the license defense, iTalk Global claims that it cannot implead Future TV, the Future TV license is governed by Chinese law, and all Future TV's witnesses are in China. Reply at 1-2, 4, 6-7.  This position is troubling because, following this logic, it would never be convenient for iTalk Global to defend any U.S. copyright infringement case as long as it raises the Future TV license defense.  Yet it is undeniable that the Future TV license is directed at business *in North America not in China*.  *See* Future TV License Agreement, Dkt No. 24-2 at 4.  iTalk Global and Future TV negotiated the license agreement in the United States, conduct business in the United States, and make profits from U.S. consumers.  Supp. Wang Decl. ¶ 8.  Future TV

should expect to be haled into a U.S. court or receive a request to indemnify iTalk Global related to a U.S. lawsuit. iTalk Global cannot use Future TV as a shield to avoid U.S. litigation.

iTalk Global misplaces its focus on the location of the iQIYI Exclusive Shows' authors, rather than the critical evidence of infringement. Reply at 6. Courts, however, focus more on the evidence of U.S. infringement than the status of foreign work when determining the best forum to adjudicate infringement in the United States. In *Jose Armando Bermudez & Co. v. Bermudez Int'l,* No. 99 CIV. 9346, 2000 WL 1225792, at *2 (S.D.N.Y. Aug. 29, 2000), the plaintiff sought a finding of copyright infringement for its rum packaging designed in the Dominican Republic. Despite the existence of foreign work, the court denied defendant's motion and found that "[b]ecause this action centers on infringements allegedly occurring in the United States, much of the sources of proof and evidence, including records of the infringing sales, are likely to be found in this country." *Id*. at *6. *See also Halo Creative & Design, Ltd. v. Comptoir Des Indes, Inc*., 816 F.3d 1366, 1374 (Fed. Cir. 2016) (reversing dismissal of a copyright case where the infringed copyrighted materials are foreign works); *Deston Songs LLC v. Wingspan Records*, No. 00 CIV 8854, 2001 WL 799811, at *5 (S.D.N.Y. July 16, 2001) (declining to dismiss a copyright action where the protected IP was a song composed in Canada); *P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc*., No. 96 CIV. 7228, 1998 WL 54610, at *4 (S.D.N.Y. Feb. 10, 1998) (declining to dismiss a copyright action where the protected IP was a collection of Italian films).

## III.    THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF DENYING ITALK GLOBAL'S MOTION

All public interest factors favor keeping this case with this District. First, court congestion is a problem in China. The Beijing Internet Court, where the iQIYI would have to file its case if this case is dismissed, accepted 34,249 cases from January 1 to September 20, 2019. Former Judge Decl. ¶ 29. Although domestic cases in China may be resolved in six months due to extremely

limited discovery, the time required to resolve ***this case***—which is considered a "foreign case"—can be one or two years or longer. *Id*. at ¶ 31.

Second, contrary to iTalk Global's argument (Reply at 8-9), iQIYI is a U.S. publicly traded company (NASDAQ: IQ), and U.S. consumers can view iQIYI shows through a web browser, a PC application, or a mobile application. Supp. Qu Decl. ¶¶ 5-6. iQIYI promotes its services in the U.S. through social media and its official YouTube channel. *Id*. at ¶ 7. iQIYI also promotes and sells content subscriptions to U.S. consumers, and members can subscribe for paid content. *Id*. at ¶ 8. iTalk Global's unauthorized broadcasting of the iQIYI Exclusive Shows caused consumer confusion, tarnished iQIYI's exclusivity ownership, and injured iQIYI in the U.S.[2]

Third, iTalk Global argues that U.S. courts' interest in adjudicating U.S. copyright disputes does not apply to iQIYI because the iQIYI Exclusive Shows are created by Chinese authors. Reply at 9. It is indisputable that iQIYI is enforcing U.S. registered copyright here. *See* FAC Ex. A1-A10. The unregistered iQIYI Exclusive Shows are entitled to the same protection under U.S. law pursuant to the Berne Convention. It is well settled that "when a work protected under U.S. copyright law—whether created in Argentina, Zanzibar, or anywhere in between—is infringed anywhere in the United States, the domestic strictures concerning scope of rights, procedure, access and substantial similarity, defenses, and remedies should apply." Nimmer on Copyright § 17.05. iTalk Global correctly notes that "federal copyright laws are designed to protect the property rights of copyright owners." Reply at 9. iQIYI, the owner of U.S. copyright, must

---

[2] *Adhikari v. KBR Inc*., No. 4:16-CV-2478, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017), cited by iTalk Global, involved a motion to dismiss for failure to state a claim under the Trafficking Victims Protection Reauthorization Act, has nothing to do with *forum non conveniens*.

vindicate its U.S.-government issued rights in the United States.  A Chinese court will not consider any U.S. copyright registration.[3]

Fourth, iTalk Global is incorrect about the choice of law.  Reply at 9.  When a work protected under U.S. copyright law is infringed in the United States, U.S. law applies.  Nimmer on Copyright § 17.05.  The choice-of-law provision in the Future TV license should be given little weight because nothing bars iTalk Global from seeking indemnification from Future TV in China.

Finally, as discussed above and in iQIYI's Opposition (at 7-8, 16-17), the Chinese litigation has no bearing on the convenience of litigating in iTalk Global's home forum.

## IV.   CONCLUSION

Because iTalk Global fails to satisfy its burden of making a clear showing to merit the exceptional tool of a *forum non conveniens* dismissal, the Court should deny the Motion without discovery.[4]  To the extent the Court finds it necessary and helpful, iQIYI respectfully seeks relevant documents, interrogatory responses, and depositions of Mr. Zhao and iTalk Global's person most knowledgeable.  *See* Opposition at 11, n.2.

---

[3] *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995) is inapposite. There, the court held that the High Court of Singapore could redress damages where the dispute involved two Singapore companies, the initial acts of alleged infringement occurred in Singapore, and infringing products were later distributed in the United States.  *Id.* 698-702. But iTalk Global is a Texas company based in Austin and the infringement is exclusively in the United States.

[4] In case the Court is inclined to dismiss this case, which the Court should not, iQIYI respectfully requests the Court stay this case while iQIYI seeks to refile its case in China.  iQIYI reserves the right to re-open this case if iQIYI is precluded from refiling or unable to seek remedies in China. *Akerblom v. Ezra Holdings Ltd.*, 2012 WL 464917, at *5 (S.D. Tex. 2012), aff'd, 509 Fed. Appx. 340 (5th Cir. 2013) ("This Court may reassert jurisdiction upon timely notification if [plaintiff] is unable to seek remedies in Singaporean courts because he has been precluded from reentering that country.").

Dated:  October 25, 2019                    Respectfully submitted,

                                     */s/ Craig Tyler*
                                     M. Craig Tyler
                                     Texas State Bar No. 00794762
                                     VINSON & ELKINS L.L.P.
                                     2801 Via Fortuna, Suite 100
                                     Austin, TX 78746-7568
                                     Telephone: (512) 542-8440
                                     Facsimile:  (512) 236.3256
                                     Email: ctyler@velaw.com

                                     Chao "Wendy" Wang (*Pro Hac Vice*)
                                     California State Bar No. 289325
                                     VINSON & ELKINS L.L.P.
                                     555 Mission Street, Suite 2000
                                     San Francisco, CA  94105
                                     Telephone: (415) 979-6900
                                     Facsimile:  (415) 651-8786
                                     Email: wwang@velaw.com

                                     Parker Hancock *(Pro Hac Vice)*
                                     Texas State Bar No. 24108256
                                     VINSON & ELKINS L.L.P.
                                     1001 Fannin Street, Suite 2500
                                     Houston, TX  77002-6760
                                     Telephone:  (713) 758-2153
                                     Facsimile:  (713) 615-5140
                                     Email:  phancock@velaw.com

                                     **ATTORNEYS FOR BEIJING IQIYI
                                     SCIENCE & TECHNOLOGY CO., LTD.
                                     AND BEIJING QIYI CENTURY
                                     SCIENCE & TECHNOLOGY CO., LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2019, a true and correct copy of the foregoing document was served on all counsel of record who have deemed to have consented to electronic service via the Court's CM/ECF system pursuant to Local Rule CV-5(a).

                                     */s/ Craig Tyler*
                                     M. Craig Tyler

US 6663866